UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | |
| v. | : | CR No. 03-100JJM |
| | : | |
| ROBERT EVANS | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant Robert Evans is in violation of the terms of his supervised release and, if so, for recommended disposition. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, on May 16, 2019, Defendant appeared initially on the original petition and was released on the previous conditions with the additional bail conditions that he refrain from alcohol use and submit to RF monitoring; the matter was continued to June 11. Based on a positive drug screen on May 16, and on his June 2, 2019, arrest for disorderly conduct, the petition was amended and Defendant was detained as of June 4, 2019. On June 11, 2019, Defendant was advised of the new violations. At his request, the matter was repeatedly continued until December 10, 2019, when he appeared, waived a violation hearing and admitted that he had committed the charged violations.

Based on Defendant's admissions, the parties' joint recommendation and the following analysis, I recommend that the Court impose a sentence of twelve months and one day of incarceration, followed by a three-year term of supervised release. I further recommend that, while on supervised release, Defendant be required to comply with the following conditions:

**The defendant shall reside at a Residential Re-entry Center, preferably the Houston House in Pawtucket, Rhode Island, for the first six months of supervised release. While at said facility, the defendant shall comply with all the policies, procedures, and regulations therein.**

**The defendant shall participate in a manualized behavioral program as directed by the USPO. Such program may include group sessions led by a counselor or participating in a program administered by the USPO. The defendant shall contribute to the costs of such treatment based on ability to pay as determined by the USPO.**

**The defendant shall participate in a program of mental health treatment as directed and approved by the USPO. The defendant shall contribute to the costs of such treatment based on ability to pay as determined by the USPO.**

**The defendant shall participate in a program of substance abuse treatment as directed and approved by the USPO. The defendant shall contribute to the costs of such treatment based on ability to pay as determined by the USPO.**

**The defendant shall participate in a program of substance abuse testing (up to 72 drug tests per year) as directed and approved by the USPO. The defendant shall contribute to the costs of such testing based on ability to pay as determined by the USPO.**

**The defendant shall abstain from the use of alcohol.**

**The defendant shall permit the probation officer, who may be accompanied by either local, state, or federal law enforcement authorities, upon reasonable suspicion of a violation of supervision, to conduct a search of the defendant's residence, automobile, and any other property under the defendant's control or ownership.**

## I. BACKGROUND

On May 3, 2019, the Court granted the Probation Office's petition for the issuance of a

warrant charging Defendant with the following violations:

**Violation No. 1: The defendant shall not commit another federal, state, or local crime.**

On April 30, 2019, at 1:28 a.m., Mr. Evans committed the offenses of driving under the influence-1st offense, assault and battery on police officer, assault with dangerous weapon, resist arrest, threat to commit crime and marked lanes

violation, as evidenced by his arrest by the Northbridge Police Department on April 30, 2019.

**Violation No. 2: The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment or placement on probation and at least two periodic drug tests thereafter.**

The defendant used cocaine, as evidenced by a positive drug test on April 1, 2019.

**Violation No. 3: The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substance, except as prescribed by a physician.**

On April 30, 2019, the defendant's Breath Alcohol Concentration ("BAC") was 0.13%, as evidenced in the Northbridge Police Department report.

In response to Defendant's June 2, 2019, arrest, the Probation Office filed an amended petition, which was granted by the Court on June 3, 2019. The amended petition added an additional sentence to Violation No. 2 and charged Defendant with two new violations as follows:

**Amended Violation No. 2: The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment or placement on probation and at least two periodic drug tests thereafter.**

The defendant used cocaine, as evidenced by a positive drug test on April 1, 2019.

The defendant used cocaine, as evidenced by a positive drug test on May 16, 2019.

**Violation No. 4: The defendant shall not commit another federal, state, or local crime.**

On June 2, 2019, at 7:30 p.m., Mr. Evans committed the offense of disorderly conduct, as evidenced by his arrest by the Pawtucket Police Department on June 2, 2019.

**Violation No. 5: The defendant shall abstain from the use of alcohol or comply with other limits on alcohol use imposed.**

The defendant used alcohol, as evidenced by the Pawtucket Police Department report on June 2, 2019.

On December 10, 2019, Defendant waived his right to a revocation hearing and admitted all five violations. Based on his admissions, I found him guilty of violating the terms and conditions of his supervised release.

## II. APPLICABLE LAW

Title 18 U.S.C. § 3583(e)(3) provides that the Court may revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, if the Court finds by a preponderance of evidence that the defendant has violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be sentenced to a term beyond five years if the instant offense was a Class A felony, three years for a Class B felony, two years for a Class C or D felony, or one year for a Class E felony or a misdemeanor. In this case, Defendant was on supervision for a Class B felony; therefore, he may not be required to serve more than three years imprisonment upon revocation.

Title 18 U.S.C. § 3583(e)(2) provides that if the Court finds that the defendant violated a condition of supervised release, the Court may extend the term of supervised release if less than the maximum term was previously imposed. In this case, the maximum term of supervised release is life.

Title 18 U.S.C. § 3583(h) and § 7B1.3(g)(2) of the United States Sentencing Guidelines ("USSG") provide that when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized, the Court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not

exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. In this case, the authorized statutory maximum term of supervised release is life.

Section 7B1.1 of the USSG provides for three grades of violations (A, B and C). Subsection (b) states that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade.

Section 7B1.1(a) of the USSG provides that a Grade A violation constitutes conduct that is punishable by a term of imprisonment exceeding one year, and that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device, or any other offense punishable by a term of imprisonment exceeding twenty years. Grade B violations are conduct constituting any other offense punishable by a term of imprisonment exceeding one year. Grade C violations are conduct constituting an offense punishable by a term of imprisonment of one year or less; or a violation of any other condition of supervision. Section 7B1.3(a)(1) states that upon a finding of a Grade A or B violation, the Court shall revoke supervision. Subsection (a)(2) states that upon a finding of a Grade C violation, the Court may revoke, extend or modify the conditions of supervision. In this case, Defendant has committed a Grade A violation; therefore, the Court shall revoke supervision.

Should the Court find that the defendant has committed a Grade B or C violation, § 7B1.3(c)(1) states that where the minimum term of imprisonment determined under § 7B1.4 is at least one month, but not more than six months, the minimum term may be satisfied by (a) a sentence of imprisonment; or (b) a sentence of imprisonment that includes a term of supervised

release with a condition that substitutes community confinement or home detention according to the schedule in § 5C1.1(e) for any portion of the minimum term.  Should the Court find that the defendant has committed a Grade B or C violation, § 7B1.3(c)(2) states that where the minimum term of imprisonment determined under § 7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (a) a sentence of imprisonment; or (b) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in § 5C1.1(e), provided that at least one half of the minimum term is satisfied by imprisonment.  Neither provision applies to this matter.

Pursuant to § 7B1.3(d), any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under § 7B1.4 (Term of Imprisonment), and any such unserved period of confinement or detention may be converted to an equivalent period of imprisonment.  In this case, there is no outstanding restitution, fine, community confinement, home detention, or intermittent confinement.

Section 7B1.4(a) of the USSG provides that the Criminal History Category is the category applicable at the time the defendant was originally sentenced.  In this instance, Defendant had a Criminal History Category of VI at the time of sentencing.

Should the Court revoke supervised release, the Revocation Table provided for in § 7B1.4(a) provides the applicable imprisonment range.  In this case, Defendant committed a Grade A violation and has a Criminal History Category of VI.  Therefore, the applicable range of

imprisonment for this violation is thirty-one to forty months; however, imprisonment is statutorily restricted to a maximum of thirty-six months.

Section 7B1.5(b) of the USSG provides that, upon revocation of supervised release, no credit shall be given toward any term of imprisonment ordered, for time previously served on post-release supervision.

### III. ANALYSIS

On March 17, 2005, Defendant pled guilty to possession with intent to distribute cocaine base (Count I) and cocaine (Count II) and was sentenced to 262 months imprisonment followed by five years of supervised release on Count I and four years of supervised release on Count II, to be served concurrently. On January 25, 2019, based on the First Step Act, Defendant's incarcerative sentence was reduced to time served and his supervised release was reduced to four years. Supervised release commenced on January 25, 2019. However, despite having served nearly fourteen years of a 262-month sentence, Defendant's release plan did not include the gradual stepdown of a halfway house. Following release, he turned to alcohol and cocaine to ease the struggle. This quickly led to the commission of serious crimes. Unfortunately, the new criminal conduct replicates dangerous behaviors that recur in Defendant's lengthy criminal history and has the potential to significantly endanger the public.

The first set of new crimes arise from Defendant's arrest in Northbridge, Massachusetts, on April 30, 2019, at 1:30 a.m., after driving while intoxicated and crashing into a stone wall. Significantly, after the crash, Defendant resisted police officers' attempts to place him in the police car, kicking, spitting and thrusting his shoulder, as well as stating, "I'm going to put a bullet in your head." This very troubling incident is the basis for Violation Nos. 1 and 3.

Second, on June 2, 2019, with the charges arising from the first case pending in Massachusetts and in this Court for the resulting violations, Defendant was arrested in a state of intoxication by Pawtucket police. While the only charge is disorderly conduct, the underlying facts are also very serious. Police were summoned by a call about Defendant screaming that he had a firearm, threatening to kill "everybody," grabbing a passer-by, telling her he was going to "knock her out," and punching her car while her children were inside. The responding officer heard Defendant scream, "I'll fucking kill all of you," and learned of another physical altercation Defendant had just had with two other individuals, whom Defendant claimed he was going to "find." This conduct is the foundation for the new Violation Nos. 4 and 5.

In recognition of Defendant's admissions to these Grade A violations, the parties jointly requested a sentence of twelve months and one day of incarceration, which is nineteen months below the low end of the applicable guidelines range (thirty-one to forty months),[1] to be followed by three years of supervised release. The parties also concurred in their proposal for the special conditions to be imposed. On allocution, Defendant apologized for drinking and being reckless and acknowledged that he has a great probation officer.

Mindful of the 18 U.S.C. § 3553(a) factors that guide the Court's sentencing decision, including the serious breach of the Court's trust (especially the new criminal conduct committed while the first three violations were pending), and the need to protect the safety of the community and to deter criminal conduct while on supervision, I concur in the parties' joint proposal. I recommend that the Court impose a sentence of twelve months and one day of incarceration, followed by a three-year term of supervised release with the special conditions set forth below. These include six months at the Houston House to provide Defendant with the

---

[1] This range is subject to a thirty-six-month statutory cap.

obviously much-needed post-release supports he did not get when he was originally released. In light of the serious nature of the violations, and particularly in connection with the enforcement of the condition of no alcohol, I also recommend that the Court impose the agreed-upon condition of search on reasonable suspicion of a violation.

## IV. CONCLUSION

After considering the appropriate factors set forth in 18 U.S.C. § 3553(a) and for the reasons expressed above, I recommend that the Court impose a sentence of twelve months and one day of incarceration, followed by a three-year term of supervised release. I further recommend that, while on supervised release, Defendant be required to comply with the following conditions:

> The defendant shall reside at a Residential Re-entry Center, preferably the Houston House in Pawtucket, Rhode Island, for the first six months of supervised release. While at said facility, the defendant shall comply with all the policies, procedures, and regulations therein.
>
> The defendant shall participate in a manualized behavioral program as directed by the USPO. Such program may include group sessions led by a counselor or participating in a program administered by the USPO. The defendant shall contribute to the costs of such treatment based on ability to pay as determined by the USPO.
>
> The defendant shall participate in a program of mental health treatment as directed and approved by the USPO. The defendant shall contribute to the costs of such treatment based on ability to pay as determined by the USPO.
>
> The defendant shall participate in a program of substance abuse treatment as directed and approved by the USPO. The defendant shall contribute to the costs of such treatment based on ability to pay as determined by the USPO.
>
> The defendant shall participate in a program of substance abuse testing (up to 72 drug tests per year) as directed and approved by the USPO. The defendant shall contribute to the costs of such testing based on ability to pay as determined by the USPO.
>
> The defendant shall abstain from the use of alcohol.

The defendant shall permit the probation officer, who may be accompanied by either local, state, or federal law enforcement authorities, upon reasonable suspicion of a violation of supervision, to conduct a search of the defendant's residence, automobile, and any other property under the defendant's control or ownership.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Crim. P. 59(b); DRI LR Cr 57.2(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 16, 2019